CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAR 10 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| ROD TURNER, | ) |
|     Plaintiff, | ) Civil Action No. 7:07cv00419 |
| | ) **MEMORANDUM OPINION** |
| LT. KINDER, et al., | ) |
| | ) By: Hon. Michael F. Urbanski |
|     Defendants. | ) United States Magistrate Judge |

Plaintiff Rod Turner brings this claim, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343, alleging that defendants used excessive force against him during his nine hour incarceration at Southwest Virginia Regional Jail ("SWVRJ"). Turner filed a motion for discovery requesting the following: (1) incident reports; (2) investigation reports; (3) "records or other documents relating to the complaint"; and (4) "interrogatories." Defendants filed responses to Turner's motion in the form of motions for summary judgment with one defendant, Lieutenant Kinder, arguing that the court must rule on whether qualified immunity applies prior to allowing plaintiff to engage in discovery.[1] The court finds that defendant Kinder's claim of qualified immunity is not yet ripe. Accordingly, the motions for summary judgment will be taken under advisement, plaintiff's motion for an extension of time in which to respond to Powers' and Kilgore's joint motion for summary judgment will be denied as moot, plaintiff will be directed to submit any other discovery requests and specific interrogatories within ten (10) days from the date of entry of the Order accompanying this Memorandum Opinion, and defendants will be directed to respond to plaintiff's discovery requests within thirty (30) days thereafter. Once discovery is completed,

---

[1] The court notes that defendants Powers and Kilgore filed an objection in response to Turner's motion for discovery alleging that a motion for summary judgment, the basis of which would be qualified immunity, would soon be filed. However, Powers' and Kilgore's motion for summary judgment does not include any qualified immunity arguments.

plaintiff will be given an opportunity to respond to the motions for summary judgment. In this response, plaintiff should provide the court with more information as to the injuries he sustained from the pepper spray and the hot shower including, but not limited to, the treatment that he received at the emergency room.

## I.

Turner alleges that on July 15, 2006, while he was in a holding cell at SWVRJ as a pre-trial detainee, he feel asleep while waiting several hours for the intake procedure to be administered. Turner contends that he was "awakened by an intense burning sensation in his eyes, nose, and throat" and that he "could not catch his breath or breath properly for several minutes." (Compl., Attach. A at 2.) Apparently, the guards had used pepper spray to attempt to wake him up. Turner alleges that Lieutenant Kinder "emptied his canister of OC spray onto [his] head and into [his] cell" and that he attempted to spray Turner directly in the eyes. (Pl.'s Resp. at 2.) When Turner questioned Kinder's actions, Kinder allegedly informed him that using pepper spray to awaken inmates was a procedure specified in their written policy. Sergeant Powers then arrived at Turner's cell with a tazer shield and informed Turner that they were "going to use the tazer shield to wake him up because the pepper spray was not effective in waking" him. (Compl., Attach. A at 2.) It is not clear, but apparently the guards did not tazer Turner. Turner was then escorted to an "extremely hot" shower that "intensified the burning sensation of the pepper spray" and caused it to "run out of [his] hair, down his face and chest, [and on to] his genitals." (Compl., Attach. A at 2-3.) Turner alleges that when he requested that Kinder adjust the temperature, Kinder refused, laughed at Turner, and threatened to pepper spray him again. Turner alleges that Officer Kilgore and Sergeant Powers were both present during the shower but that neither officer intervened. Turner contends that he was "non-resistant and non-

combative at all times" while incarcerated at SWVRJ. (Compl., Attach. A at 2.) Turner further alleges in his response to Kinder's motion for summary judgment that he was not offered any medical care at SWVRJ and that this demonstrated deliberate indifference to his serious medical needs. Turner contends that he was released that same day and was later treated at the Emergency Room for the "burns" caused by the pepper spray. (Compl., Attach. A at 3.)

Defendants disagree with Turner's version of the facts and contend that on July 15, 2006, Officer Larry Kilgore, a new recruit that had not yet advanced through the police academy, was charged with collecting lunch trays from the inmates. When Kilgore reached Turner's cell, he ordered Turner to return his lunch tray; however, Turner was unresponsive. Kilgore attempted to open the door to Turner's cell but Sergeant Powers, Kilgore's immediate supervisor, stopped him and explained that advancing into the cell was dangerous because Turner could be hiding a weapon or could pose some other sort of threat. Powers then attempted to elicit a response from Turner, but was unsuccessful. Powers observed that Turner was breathing and that he did not appear to be in any medical distress. Powers then contacted his supervisor, Lieutenant Kinder, for help. When Kinder arrived, he also attempted to elicit a response from Turner, but was unsuccessful. Defendants contend that they used loud voices so that if Turner was asleep, he would be roused. Kinder alleges that he subsequently administered a one to two second burst of "O.C. pepper spray" that hit Turner in the back of the head and on the wall in front of Turner. (Kinder Mot. Summ. J., Ex. A at 1.) Kinder also instructed Powers to retrieve the "I.C.E. shield." (Powers, Kilgore Mot. Summ. J., Ex. A at 2.) When Powers returned, Turner was standing and cursing. Kinder alleges that he informed Turner that he could be examined by the nurse, but Turner refused. Defendants state that they immediately escorted Turner to the showers for decontamination and, upon their return, offered

Turner medical treatment again. Turner again refused. Defendants explain that the temperature of the showers is "preset" and cannot be changed by the officers or inmates. Powers and Kilgore allege that they did not hear Turner complain about the water temperature.

## II.

Defendant Kinder contends that he is entitled to qualified immunity from Turner's § 1983 claims. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Siegert v. Gilley, 500 U.S. 226 (1991). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [government] conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001).

When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. Henry v. Purnell, No. 06-1523, 2007 WL 2729126, at *1 (4th Cir. Sept. 20, 2007). If the court answers in the affirmative, the next, sequential step is to ask whether the right was clearly established–that is, whether it would be clear to a reasonable officer that his conduct violated the asserted right. Id.; Miller v. Prince George's County, Md., 475 F.3d 621, 627 (4th Cir. 2007). "The answer to both Saucier questions must be in the affirmative for a plaintiff to defeat a [defendant's] motion for summary judgment on qualified immunity grounds." Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002). "The plaintiff bears the burden of proof on the first question- i.e., whether a constitutional violation occurred," while the defendant bears the burden on the remaining question. Henry, 2007 WL 2729126, at *2.

Where a defendant raises qualified immunity as a defense, the initial determination that qualified immunity will not apply must be made before discovery is permitted. See Lescs v. Martinsburg Police Department, 138 F. App'x 562, 564 (4th Cir. 2005) (finding that the district court was required to rule on defendants' dispositive motion to dismiss or for summary judgment raising sovereign and qualified immunity issues prior to allowing any discovery). However, the United States Court of Appeals for the Fourth Circuit has held that "ordering discovery on the issue of immunity . . . [is] well within the discretion of the district court." American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 787 (4th Cir. 1993). Indeed, most often, "qualified immunity is tested at the summary judgment stage after the facts have been developed through discovery." Alford v. Cumberland County, No. 06-1569, 2007 WL 2985297, at *3 (4th Cir. Oct. 15, 2007).

It has been clearly established for some time that the use of excessive force upon a pretrial detainee violates the Due Process Clause of the Fourteenth Amendment.[2] See Graham v. Connor, 490 U.S. 386, 395 (1989). To succeed, the plaintiff must first demonstrate "that Defendants 'inflicted unnecessary and wanton pain and suffering'" upon the detainee. Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (internal quotation marks omitted). "Even if there is a genuine issue of material fact as to whether Defendants behaved

---

[2] As a practical matter, the contours of pretrial detainees' rights under the Due Process Clause are coextensive with the Eighth Amendment protections applicable to convicted inmates. See Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997). The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

Case 7:07-cv-00419-SGW-mfu    Document 56    Filed 03/10/08    Page 5 of 7    Pageid#: 184

maliciously or sadistically after the need for force has subsided," plaintiff must also demonstrate that the injuries were "more than de minimis" or that "'the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than de minimis injury.'" Id. (quoting Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994) (en banc)). Likewise, it is clearly established that the Fourteenth Amendment prohibits jail officials from acting with deliberate indifference to a pretrial detainee's serious medical needs. See Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992).

The court finds that the discovery requested by Turner could contribute to the determination of whether defendants acted maliciously and sadistically for the very purpose of causing harm[3], whether Turner's injuries were more than de minimis, and whether defendants were deliberately indifferent to Turner's allegedly serious medical needs. There are many factual disputes that could be resolved by the incident reports and other documents that Turner requests including whether Kinder's response to Turner's silence was appropriate considering the circumstances and whether an entire canister rather than a one to two second burst of pepper spray was administered. The court further determines that the discovery requested by Turner could contribute to the determination of the extent of Turner's injuries and whether or not defendants offered Turner medical care. Accordingly, as the discovery requests are relevant to the issue of qualified immunity, the court finds that Turner has made an adequate showing of his need to engage in discovery and will grant him the opportunity to do so.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and

---

[3] See Duran v. Sirgedas, 240 F. App'x 104 (7th Cir. 2007) (genuine issue of material fact as to whether police officers had legitimate reason to discharge pepper spray at partygoers precluded summary judgment on qualified immunity grounds on partygoers' Fourteenth Amendment excessive force claim against officers).

accompanying Order to plaintiff and to counsel of record for defendants.

**ENTER:** This 10th day of March, 2008.

/s/ 
United States Magistrate Judge